**Lona Norine TERRY, Appellant,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Appellee.**

Supreme Court of Tennessee.

March 4, 1974.

James W. Justice, Knoxville, for appellant.

Robert R. Campbell, Knoxville, for appellee; Hodges, Doughty & Carson, Knoxville, of counsel.

## OPINION

DYER, Chief Justice.

This case involves the construction of our Uninsured Motorist Statutes enacted by Chapter 371, Public Acts of 1967, now carried in Tennessee Code Annotated as §§ 56-1148 through 56-1153. The issue more particularly is the legislative purpose in including T.C.A. § 56-1152 as a section of our Uninsured Motorist Statutes. The facts being stipulated, jurisdiction is properly in this Court.

On February 1, 1972, Vernon Lee Terry, an employee of Vasey Heating Company, was operating a motor vehicle owned by his employer when he was involved in an accident with a motor vehicle operated by one Carl Reed Yearwood, which accident resulted in the death of Vernon Lee Terry. The Vasey vehicle was insured by appellee, Aetna Casualty and Surety Company, which policy contained uninsured motorist coverage in accord with our statutes. At the time of this accident Vernon Lee Terry was an insured under the terms of the Aetna policy. Carl Reed Yearwood was an uninsured motorist within the meaning of our Uninsured Motorist Statutes. As a result of Terry's death, workmen's compensation benefits have been paid or allowed in the amount of $10,080.26.

As a result of this accident appellant, Lona Norine Terry, the widow of Vernon Lee Terry, has recovered a judgment against Carl Reed Yearwood in the amount of $100,000.00. Appellee in accord with T.C.A. § 56-1153 was timely notified of this suit.

On October 30, 1972, appellant brought the action sub judice to recover under the provisions of the uninsured motorist coverage contained in appellee's policy, the amount applicable in this case being the sum of $10,000.00. Appellee defended relying on the following provision in its policy:

III. LIMITS OF LIABILITY.

(Regardless of the number of insureds under this policy, the company's liability is limited as follows:

\* \* \* \* \* \*

(b) Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by

\* \* \* \* \* \*

(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.

The trial judge held the above provision of the policy valid and applicable under the facts of this case; that is, since workmen's compensation benefits in excess of $10,000.00 had been paid or allowed, appellee had no liability under the uninsured motorist provisions of its policy.

T.C.A. § 56–1152, as enacted by the Legislature, reads as follows:

SECTION 5. *Be it further enacted,* That nothing contained in this Act shall be construed as requiring the forms of coverage provided pursuant to this Act, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in Section 59–1206, Tennessee Code Annotated. Such forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits. Chapter 371, Public Acts of 1967.

The first case directly discussing T.C.A. § 56–1152 is the unreported case of Judy Kinnear Jenkins, Administratrix v. State Farm Mutual Automobile Insurance Company, Davidson Equity, released August 3, 1970.

In the *Jenkins* case, Kinnear and his wife were killed in an accident involving an uninsured motorist. Kinnear had a policy with State Farm providing uninsured motorist coverage with limits of $20,000.00, and State Farm paid the Administratrix the sum of $20,000.00. The policy also provided coverage for medical and burial expenses and the Administratrix brought suit to recover under this coverage. State Farm defended relying on a provision in its policy to the effect the uninsured motorist coverage would be reduced by any amount paid under medical and burial coverage, which provision as applied to the facts of this case would limit State Farm's total liability to $20,000.00. The Administratrix took the position this limiting provision was invalid as being against public policy as a stated premium had been paid for this coverage.

This Court in *Jenkins* rejected this argument, holding the limiting provision valid relying upon T.C.A. § 56–1148, which requires such policies be filed and approved by the Commissioner of Insurance and also upon the last sentence of T.C.A. § 56–1152, copied above in this opinion. The Court noted the approval of the policy by the Commissioner of Insurance, inter alia, relates directly to the rate charged; that is the rate charged takes into consideration any limitations of liability in the policy.

The next case discussing T.C.A. § 56–1152 is State Farm Mutual Automobile Insurance Co. v. Barnette, Tenn., 485 S.W.2d 545 (1972). This case involved one Barnette, an insured under a State Farm policy, who was injured while riding on a motorcycle driven by one Noel, when said motorcycle collided with an automobile driven by one Dickenson. Barnette sued Noel and Dickenson, obtaining from Dickenson a settlement in the amount of $9,500.00, and against Noel, an uninsured motorist, a judgment in the amount of $170,000.00.

Barnette sued to recover under the uninsured motorist provision of the State Farm policy, having coverage in the amount of $10,000.00. State Farm admitted liability for $500.00, but denied further liability on a provision of its policy providing for an offset against coverage for any amount received by its insured from a person jointly and severally liable.

In *Barnette*, as applied to the facts, we held this limiting provision was invalid as

being in derogation of the legislative purpose as expressed in T.C.A. § 56–1152, especially the last sentence thereof. In *Barnette* we said:

> . . . the use of the word "duplication" in the last sentence of T.C.A. § 56–1152, intended policies could contain provisions . . . which would prohibit an insured from receiving payment under the uninsured motorist coverage where such payment, when added to the other payments received by insured, whether received from "insurance or other benefits" would exceed the amount of insured's actual damage and, therefore, be in effect a duplication. 485 S. W.2d at 547.

It is here in the case, sub judice, argued that *Barnette* is authority for the proposition it was the intention of the Legislature in T.C.A. § 56–1152, to allow any offsets against uninsured motorist coverage only where such would indemnify the insured above his actual damages.

The last case decided by this Court involving T.C.A. § 56–1152 is Shoffner v. State Farm Mutual Ins. Co., Tenn., 494 S. W.2d 756 (1972). Nila E. Shoffner, an insured under a State Farm policy with uninsured motorist coverage, was injured while riding as a guest passenger in an automobile owned and operated by Marie Ousley when the Ousley automobile collided with a vehicle operated by one Lewis, an uninsured motorist. The Ousley automobile was insured under a policy of Southern Fire and Casualty Company, containing an uninsured motorist provision under which Southern Fire paid its full limits of $20,000.00, of which amount Nila E. Shoffner received $5,137.00.

As a result of this accident Nila E. Shoffner was awarded a judgment against Lewis, an uninsured motorist, in the amount of $12,000.00, and her husband was awarded a judgment in the amount of $6,700.00 for medical expenses and loss of services. Pursuant to these judgments the

Shoffners brought suit against State Farm under the uninsured motorist provision of their policy claiming in their suit the full amount of coverage of $20,000.00. State Farm denied any liability under the following provision of its policy:

> *Other Insurance.* With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this coverage, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance. 494 S.W.2d at 757.

The trial judge rejected the argument of State Farm, awarding the Shoffners $4,863.00, being the difference between the $10,000.00 uninsured motorist coverage for one person in one accident and the $5,137.-00 received by Nila E. Shoffner from Southern Fire.

In examining the *Shoffner* opinion it is well to note the status of the case here on appeal. It should be noted the Shoffners did not appeal and their right to claim as they did in the trial court the full coverage of $20,000.00 or any lesser amount other than awarded by the trial court was not before this Court. State Farm did appeal alleging error in the failure of the trial judge to give full validity to the "Other Insurance" provision of its policy, which it claimed was valid under T.C.A. § 56–1152.

It was in this Court and in the trial court the position of State Farm that under the facts a literal reading of its "Other Insurance" provision exonerated it of all liability. We agree this "Other Insurance" provision is not ambiguous and if valid and fully operative under the facts such would operate as a complete defense. Nila E. Shoffner was injured in an automobile not owned by the insured and other insurance was available to her under a pol-

icy containing identical limits with the State Farm policy.

In affirming the trial judge in *Shoffner* we have held this "Other Insurance" provision is a valid offset under T.C.A. § 56–1152, but operative only to the extent of the amount of $5,137.00 received by the Shoffners from Southern Fire.

Under *Shoffner* it is argued that pursuant to T.C.A. § 56–1152 offsets contain in policies having uninsured motorist coverage are valid except where such operate to inhibit an insured's recovery to less than the statutory minimum (T.C.A. § 56–1148) required where the insured's actual damages amount to or exceed the statutory minimum.

*Shoffner* was distinguished from *Barnette* on the factual basis that *Barnette* involved two joint tort-feasors.

Under a review of these cases there arises a possibility of conflict when these decisions are applied to a different set of facts. The solution to this problem requires that we come to grips with the legislative purpose contained in T.C.A. § 56–1152, as a section of our uninsured motorist statute.

Under our research there appears to be two theories in regard to offset provisions in policies containing uninsured motorist coverage based on the legislative intent in the enactment of uninsured motorist statutes. The first theory is based on a finding the legislative purpose of such statutes is to provide full coverage up to the policy limits so long as payments under the uninsured motorist coverage, plus any payments received from other sources, do not exceed insured's actual damage. This is termed broad coverage and any offsets in the policies inhibiting such full coverage are held void. The second theory is based on a finding the legislative purpose of such statutes is to provide insured a recovery only up to the statutory minimum required without regard to insured's actual damages, unless such be less than the statutory mini-mum. This is termed limited coverage and under such, by virtue of set-off provisions in a policy, an insured's statutory minimum coverage can be reduced by amounts received from other sources.

In the case, sub judice, the trial judge has accepted the second or limited coverage theory as being the legislative purpose in including T.C.A. § 56–1152 as a section of our uninsured motorist statutes.

It appears forty states have adopted uninsured motorist statutes similar to our statute with one material exception, which we will note. In these other jurisdictions the greater weight of authority holds to the first theory of broad coverage. A number of these cases are cited and discussed in Simpson v. State Farm Mutual Ins. Co., D.C., 318 F.Supp. 1152 (1970). However, in all of these other jurisdictions, with the exception of Iowa, none of their uninsured motorist statutes contain any provision similar to T.C.A. § 56–1152. We should here note we have found no decisions from Iowa on the point here at issue.

Since under the greater weight of authority, absent a provision such as T.C.A. § 56–1152, uninsured motorist statutes are held to provide broad coverage (a holding with which we agree) it becomes obvious the Legislature by inclusion of T.C.A. § 56–1152 as a section of our uninsured motorist statutes denotes a legislative purpose to provide less than broad coverage.

It results, and we so hold, by enactment of T.C.A. § 56–1152 as a section of our uninsured motorist statutes. it is the legislative purpose to provide an insured motorist a right of recovery under the uninsured motorist provisions of his policy only up to the statutory required minimum (T.C.A. § 56–1148), and provisions in such policies, approved by the Commissioner of Insurance, operating to reduce such coverage where other coverage or benefits are available to the insured arising from accident causing the loss, are valid if such provisions do not operate to deny payments to

an insured of less than the statutory minimum.

Prior decisions of this Court in conflict with this opinion are modified to conform to this opinion.

The judgment is affirmed.

McCANLESS and FONES, JJ., and LEECH and JENKINS, Special Justices, concur.