Richard L. **HENDRICKSON** and Cynthia Hendrickson, Plaintiffs,

and

Frances Igo Jackson, Barbara Igo Swartz, and Dorothy L. Ussery, Plaintiffs-Appellants,

v.

Curtis Lee **CUMPTON**, and Brady E. Hagerman, Defendants,

and

State Farm Mutual Automobile Insurance Company, Intervenor,

and

MFA Mutual Insurance Company, Intervenor-Respondent.

No. WD 32398.

Missouri Court of Appeals, Western District.

March 9, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 5, 1982.

John C. Milholland (argued), Anderson & Milholland, Harrisonville, for plaintiffs-appellants.

John E. Turner, Kansas City, argued, for intervenor-respondent; Popham, Conway, Sweeny, Fremont & Bundschu, P. C., Kansas City, of counsel.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Frances Igo Jackson, Barbara Igo Swartz and Dorothy L. Ussery appeal from a circuit court judgment in a declaratory judgment action wherein the court found that the uninsured motorist provision of an MFA Mutual Insurance Company policy is not applicable to these appellants. We reverse the judgment.

On July 23, 1978, Mrs. Jackson, Mrs. Swartz and Artie C. Ussery were passengers in a Ford Pinto automobile owned by Cynthia Hendrickson and operated by Richard L. Hendrickson when that automobile was struck by a truck owned by Brady E. Hagerman and operated by Curtis Lee Cumpton. Mrs. Jackson and Mrs. Swartz were injured. Mr. Ussery was killed. Thereafter, on January 5, 1979, all of the plaintiffs but Mrs. Ussery filed suit for personal injuries and property damage against Mr. Cumpton for his negligent operation of the truck and against Mr. Hagerman for his negligent entrustment of the vehicle to Mr. Cumpton. Mrs. Ussery joined the plaintiffs in suing both defendants for the death of her husband.

The Pinto was insured by MFA Mutual Insurance Company under a policy issued to the Usserys. Mr. Hendrickson's car was insured by State Farm Mutual Automobile Insurance Company. Mr. Cumpton had extended personal liability insurance under a Northwestern National Insurance Company policy issued to his parents. In his memorandum opinion the trial judge found that

Mr. Hagerman had neither insurance coverage on the truck nor any other liability insurance coverage.

On September 27, 1979, MFA, alerted to possible claims under its policy's uninsured motorist provision, moved to intervene [1] stating that: "Your applicant further states that its attorney has been informed that on July 23, 1978, the defendant Brady E. Hagerman in the above-entitled action did not have any automobile liability insurance and that he allowed Curtis Lee Cumpton to operate the automobile in question." Thereafter, MFA filed its answer to the plaintiffs' petition. On March 3, 1980, MFA filed its petition and counterclaim for judgment declaring that MFA had no duties or obligations to the plaintiffs under the uninsured motorist provision of its policy.[2]

At the hearing on June 20, 1980, Neil Helbling, claims manager for Northwestern Insurance Company, testified that his company had offered the plaintiffs its policy limits for the liability of Mr. Cumpton but that, "I don't see why we would provide any coverage for Mr. Hagerman." Mr. Cumpton testified that he was driving the truck with Mr. Hagerman's permission.

In his judgment entry of November 7, 1980, the trial judge found

that because defendant Curtis Lee Cumpton was and is afforded liability insurance protection under the policy issued by Northwestern National Insurance Company the uninsured motor vehicle coverage provisions of the policies of the Intervenors, State Farm Mutual Automobile Insurance Company and MFA Mutual Insurance Company are not applicable and afford plaintiffs no coverage protection or benefits.

On appeal, the plaintiffs contend that the trial court's judgment was in error because § 379.203 [3], R.S.Mo.1978, requires every automobile liability insurance policy to afford uninsured motorist coverage to its insureds for payment of damages for personal injury and death for which the owner of an uninsured motor vehicle is liable to an insured under the policy by reason of ownership or use of the uninsured motor vehicle. Defendant Hagerman is individually liable to the plaintiffs for the result of his tortiously permitting Mr. Cumpton to drive Hagerman's truck when he knew Cumpton's ability to drive was impaired. Moreover, MFA's policy of insurance on the Pinto contractually agrees to pay the damages for which the owner of a vehicle is liable when that liability is not covered by insurance.

MFA argues that § 379.203 does not require every policy to afford uninsured motorist coverage for damages for which the owner of the uninsured motor vehicle is liable when the operator of the vehicle has applicable liability coverage. In addition, MFA contends, the reasonable expectation of the parties to the insurance policy on the Pinto was that uninsured motorist coverage would apply only absent other applicable insurance. MFA insists that the record contains no evidence to demonstrate whether or not Mr. Hagerman or his truck were uninsured.

◼ In a declaratory judgment action we review the case upon both the law and the evidence bearing in mind that the judgment will not be set aside unless clearly erroneous. *Helmkamp v. American Family Mutual Insurance Co.*, 407 S.W.2d 559, 566 (Mo. App.1966).

---

1. State Farm also intervened but is not a party to this appeal.

2. On April 10, 1980, Mrs. Jackson, Mrs. Swartz and Mrs. Ussery filed separate answers to the MFA and State Farm petitions for declaratory judgment, and separate amended petitions which included cross-claims against Mr. Hendrickson for his negligence.

3. § 379.203 reads in pertinent part:

1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. . . .

The court in *Heafner v. Safeco National Insurance Co.*, 613 S.W.2d 478, 479 (Mo.App. 1981), addressed the issue "whether the availability of personal liability insurance for the negligence of an operator forecloses availability of uninsured motor vehicle coverage concerning the owner's negligent entrustment." The court at 480 held:

Plaintiffs aver that because the owner of the automobile now in question was liable for its negligent use, and the owner had no liability insurance applicable to this use, the automobile was "uninsured" and the above-mentioned uninsured motorist clause applies in favor of the policyholder. We are constrained to agree.

We are confronted with a situation where there were two responsible parties, one of whom was entirely uninsured and the other, underinsured. . . .

[T]he purpose behind § 379.203, RSMo. 1978, is to afford the same protection to a party injured by an uninsured motorist as would be available if the offending vehicle was covered by a standard liability insurance policy. However, our Missouri Supreme Court has recognized and recently reaffirmed that § 379.203 . . . is an "uninsured motor vehicle" statute, not an "uninsured motorist" statute. *Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137 (Mo. banc 1980). Also, see *Miles v. State Farm Mutual Automobile Insurance Co.*, 519 S.W.2d 378 (Mo.App. 1975). We have, therefore, determined that because defendant Shy owned the automobile, and carried no insurance on same as protection against his negligent acts concerning such ownership, there existed no automobile liability insurance policy which insured his vehicle.

■ Following the *Heafner* rule, we now hold that the personal liability insurance for the negligence of an operator of a motor vehicle does not foreclose the availability of the uninsured motor vehicle coverage for the owner's negligent entrustment of his automobile.

The reasonable expectation of the insureds to whom the MFA policy was issued must be considered to be that they were being afforded all of the coverage the law required the insurance company to give them in their policy. The opposite side of that coin would be that the reasonable expectation of the insurance company in issuing the policy in compliance with Missouri law would be that the insureds were being afforded all of the coverage which Missouri law and statutes require the insurance company to extend to their insureds under § 379.203. Therefore, the insurance company will not now be heard to say that it intended not to comply with the mandate of the Missouri statute as construed by the Missouri Supreme Court en banc decision in *Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137, 143–44 (Mo.1980), where the court held that the terms "uninsured motor vehicle" and "uninsured motorist" in § 379.203 are not interchangeable.

■ MFA's last argument is that no evidence in the record demonstrates that Mr. Hagerman and his truck were uninsured. The difficulty with the company's position on that point is that in its motion to intervene it alleged that its attorney had been informed that defendant Hagerman did not have automobile liability insurance. Whether or not that was the only basis for the insurer's motion to intervene or the court's order permitting the intervention, the intervenor cannot now assert either that Mr. Hagerman was insured or that the record does not demonstrate that he had no insurance. The matter was presented to the court on the theory that Mr. Hagerman was uninsured. The insurance company will not now be permitted to take the opposite position.

■ The MFA policy issued to the Usserys includes the following applicable provisions:

1. Coverage E—Uninsured Motorists (Damages for Bodily Injury)—The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the *owner* or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, *caused by* accident and arising out of the ownership, mainte-

nance or *use of such uninsured highway vehicle*; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company.

. . . .

2. Definitions—With respect to the insurance afforded under Coverage E, the following additional definitions apply:

"insured" means:

(a) the named insured, his spouse, and any relative;

(b) any other person while occupying an insured automobile; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Coverage E applies sustained by an insured under (a) or (b) above. . . .

"insured automobile" means:

(a) the described automobile;

. . . .

"uninsured highway vehicle" means:
(a) a highway vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such highway vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder. . . . (Emphasis added.)

Thus, Mr. Hagerman and his truck fall within the provisions and definitions of the policy.

For the foregoing reasons, we reverse the judgment. The case is remanded with directions that the trial judge enter judgment in favor of appellants.

All concur.